THOMPSON, Presiding Judge.
Thomas Pell appeals from the summary judgment entered in favor of Lance Tid-well and the Municipal Utilities Board of Albertville (“the board”). Pell filed a civil action against Tidwell, the board, and Donna Rucks alleging negligence in connection with a motor-vehicle accident in which Rucks’s vehicle collided with the vehicle in which Pell was a passenger. Pell asserted that Tidwell, a board employee, had negligently signaled to Rucks that she could proceed and that Rucks had then proceeded across the intersection where the accident occurred without verifying that the way was clear.
In his appellate brief, Pell acknowledges that the facts in this case are not in dispute, and, in fact, he adopts the evidence as set forth in the brief in support of the motion for a summary judgment filed by Tidwell and the board. That evidence tends to show the following:
In his job with the board, Tidwell drove and operated a truck with a lift bucket. He had a commercial driver’s license to operate the truck, and he testified by deposition that he had never been involved in any previous motor-vehicle accidents.
On December 4, 2006, Tidwell was driving his truck northbound on Highway 431 in Albertville. In that area, Highway 431 is a divided four-lane highway with a grass median between the northbound and southbound lanes. In his deposition, Tid-well testified that he pulled into the left-turn lane in anticipation of making a left turn onto Buchanan Road. He stated that he saw a Toyota automobile in the paved portion of the median. Tidwell said that the Toyota appeared to be pointing slightly to the north, and it looked to him as though the driver intended to pull onto Highway 431 to travel north.
Tidwell said that, in entering the left-turn lane, he pulled the truck so far to the left that part of the truck was off the pavement. Because of the way the Toyota was situated in the median, Tidwell said, there was not enough room for him to turn into the median to begin his turn onto Buchanan Road. He said that he saw the driver of the Toyota raise both hands in the air. Because the Toyota was preventing him from making the left turn, Tidwell elected to yield the right-of-way to the Toyota. He said that he looked in the side mirror on the passenger side of the truck to make sure that the lefthand, or inside, northbound lane was clear. He said that, when the lane was clear as far as he could see, he pointed his finger at the inside northbound lane. Tidwell said that, by making that hand signal, he meant that the inside lane was clear so that the Toyota could turn into that lane and travel north.
Rucks, the driver of the Toyota, testified by deposition that she saw Tidwell approach in the truck and recognized that he had the right-of-way to make a left turn. She said that she saw Tidwell signal and relied on his signal to mean that she could *167 “go.” She waved an acknowledgment to Tidwell and started across the northbound lanes; she did not turn into the inside northbound lane as Tidwell had expected. Rucks testified that she did not pause to ensure that all the lanes were clear before she proceeded across the northbound lanes of Highway 431. As Rucks crossed into the outside northbound lane, not the lane Tidwell had motioned for her to enter, her car collided with the car in which Pell was a passenger. Pell’s leg was broken in the accident.
After considering the evidence and the parties’ arguments, the trial court entered a summary judgment in favor of Tidwell and the board on August 20, 2010. Pell’s claims against Rucks remained pending, however.[1] On November 29, 2012, the trial court entered a judgment dismissing the remaining claims against Rucks after she and Pell entered a pro tanto joint stipulation of dismissal. Pell then appealed the judgment in favor of Tidwell and the board to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
We review a summary judgment pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
As mentioned, the parties do not dispute the events that led to the collision between Rucks’s vehicle and the vehicle in which Pell was a passenger. The issue in this case is whether, as a matter of law, Tidwell can be held liable for negligently signaling Rucks to proceed.[2] Tidwell and the board argue that Tidwell had no legal duty to Rucks or Pell when Tidwell motioned for Rucks to proceed. They assert that Tid-well’s “act of courtesy” in motioning Rucks to the inside lane did not impose a duty on Tidwell, and it did not relieve Rucks of what they said was her affirmative, nondel-egable duty to yield the right-of-way to traffic proceeding on the through street, that is, traffic traveling northbound on Highway 431.
*168 Pell, on the other hand, maintains that even though Tidwell was under no affirmative duty to act, once he volunteered to do so, he was then charged with the duty of acting with due care. When Tidwell checked his side mirror and motioned to Rucks, Pell says, he “assumed the duty to act as a reasonable and prudent person.” Therefore, according to Pell, Tidwell is liable for any negligence in connection with signaling to Rucks to proceed.
In their brief on appeal, Tidwell and the board cite Parker v. Birmingham, Electric Co., 254 Ala. 488, 48 So.2d 873 (1950), to support their argument that Tidwell did not owe Rucks a duty of care. In Parker, the plaintiff had been a passenger on a bus operating between Birmingham and Bessemer. After the passenger disembarked, she had to cross a four-lane “super highway.” The passenger could not see around the bus to determine whether it was safe for her to cross. The bus driver signaled to her to cross the highway in front of the bus. The passenger started across the highway, and, as she cleared the bus, she was hit by a car traveling down the highway. The passenger sued the bus line, claiming, among other things, that the bus driver had been negligent in motioning her across the highway. Our supreme court held that the plaintiff could not sustain her action because the bus company was no more responsible than the passenger for the passenger’s safe crossing. Specifically, our supreme court stated:
“It may be added that the signal by the operator that plaintiff might walk in front of the bus in safety does not create a danger not readily observable to the passenger. This [negligence] count did not allege otherwise and it may be assumed that the passenger, as an ordinarily intelligent and prudent person, would have knowledge that the super highway might have traffic on it and that it was dangerous to go across the street without exercising diligence to avoid the danger.”
254 Ala. at 493-94, 48 So.2d at 877-78.
Although Parker is instructive, Alabama appellate courts have not yet considered the question whether a signaling driver is liable for accidents that might occur after he or she signals the driver of another automobile. The jurisdictions that have considered the issue are split. As the Court of Appeals of Ohio noted in an unreported case:
“There are two schools of thought in the United States relating to the liability of a signaling motorist. The minority view, adopted by the ... court [in Duval v. Mears, 77 Ohio App.3d 270, 602 N.E.2d 265 (1991) ], holds that no duty exists for a signaling motorist to exercise caution and prevent accidents. This view rests on the premise that a signal to cross can be interpreted as no more than a yielding of the right of way. Thus, the signaler is not responsible for any accidents that might occur when the crossing motorist enters into a different lane. See Annotation, Motorists Liability for Signaling Other Vehicle or Pedestrian to Proceed, or to Pass Signaling Vehicle (1993), 14 A.L.R. 5th 193, 202, Section 2[a]; see also, e.g., Peka v. Boose (1988), 172 Mich.App. 139, 143, 431 N.W.2d 399, 401; Dawson v. Griffin (1991), 249 Kan. 115, 122-23, 816 P.2d 374, 379, 14 A.L.R. 5th 1000, 1009.
“The majority view, however, is that a signaler may be held liable, under some circumstances, on the principle that one who acts gratuitously assumes a duty of care. Liability rests on the view that sometimes a signal may be interpreted as an indication that the way is clear and it is safe to proceed. See 14 A.L.R. 5th at 202, Section 2[a]; see also, e.g., Cunningham v. Natl. Serv. Industries, Inc. *169 (1985), 174 Ga.App. 832, 331 S.E.2d 899, 904; Massingale v. Sibley (La.App.1984), 449 So.2d 98, 101....
“Even under the majority view, however, it is a necessary condition of the signaler’s liability that his signal communicated the message that the driver could proceed safely across both lanes. Only if the message is reasonably ■viewed as an ‘all clear’ can the signaler be said to have taken upon himself the duty to act cautiously. 14 A.L.R. 5th at 202, Section 2[a]. The nature of the message that a driver’s signal conveyed is usually a question of fact for the trier of fact. Askew v. Zeller (Pa.Super.1987), 361 Pa.Super. 35, 521 A.2d 459, 462.
“It is also necessary, under the majority view, that the turning driver actually relied on the signal as an ‘all-clear’ message. 14 A.L.R. 5th at 202, Section 2[a]. Only with such reliance can any act of negligence in signaling be considered a proximate cause of the plaintiffs injuries. Askew, 521 A.2d at 463.”
Isaacs v. Larkin Elec. Co., (No. 16948, Sept. 4, 1998) (Ohio App.1998) (not reported in Ohio App. or N.E.2d).
In Duval v. Mears, 77 Ohio App.3d 270, 274, 602 N.E.2d 265, 267 (1991), cited in Isaacs, supra, the Ohio appellate court “decline[d] to impose a duty of care to ascertain safe passage on the motioning motorist.” In reaching its decision, the Ohio appellate court relied on the decision of the Ohio Supreme Court in Van Jura v. Row, 175 Ohio St. 41, 191 N.E.2d 536 (1963); quoting the syllabus of the court in Van Jura, the Duval court noted:
“ ‘One who seeks to make a left turn, in the face of traffic coming from the opposite direction, cannot absolve himself from the obligation to proceed with due care by claiming that he depended upon a signal of a motorist going in the opposite direction, who stopped to allow the one making a left turn to pass in front of him.’ ”
77 Ohio App.3d at 273, 602 N.E.2d at 267.
Similarly, in Peka v. Boose, 172 Mich. App. 139, 143, 431 N.W.2d 399, 401 (1988), also cited in Isaacs, supra, the Michigan Court of Appeals held that,
“[sjince all participants herein were motorists driving in ordinary circumstances (i.e., no unusual obstacles or obstructions), defendant Bottger assumed no duty to plaintiff to warn defendant Boose of plaintiffs approaching vehicle. We find as a matter of law that defendant Bottger’s hand motion signified nothing more than permission to cross in front of her car and could not be relied upon as assurance that all was clear ahead.”
In reaching the opposite conclusion, the Indiana Court of Appeals opined that the analysis of the Duval and Peka courts was not “so simple.” Key v. Hamilton, 963 N.E.2d 573, 582 (Ind.Ct.App.2012). The Indiana court reasoned:
“Just because [a signaled driver] had a duty to yield to [an oncoming vehicle] at the intersection does not preclude others, including [the signaling motorist], from also having a duty of care to [the driver of an oncoming vehicle] or any other, motorist on the road at the same time. For example, there can be no doubt that the injured [driver of the oncoming vehicle] owed a duty of care when he entered that intersection. Likewise, had there been a police officer directing traffic at the scene, he would have also owed a duty of care. The point is that more than one person may have a duty of care in a particular situation. Consequently, the question is not whether [the signaling motorist] was taking away [the signaled driver]’s duty toward [the driver of the oncoming vehi- *170 ele] in this situation; rather, the question is whether he had his own individual duty toward [the driver of the oncoming vehicle].”

Id.

In Alabama, by statute, a driver has a duty to obey the Alabama Rules of the Road, § 32-5A-1 et seq., Ala.Code 1975. Specifically, § 32-5A-3 provides that it is unlawful for any person “to do any act forbidden or fail to perform any act required in this chapter.” The Rules of the Road set forth the responsibilities of a driver at an intersection:
“(b) Except when directed to proceed by a police officer every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection or junction of roadways.”
§ 32-5A-112(b), Ala.Code 1975 (emphasis added). The Rules of the Road also require a driver who is turning left to yield to oncoming traffic:
“The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.”
§ 32-5A-111, Ala.Code 1975.
We agree with the Duval court that a motorist’s hand signal to another motorist to proceed does not absolve the signaled motorist of his or her duty under Alabama law to ensure that it is safe to travel across an intersection and to yield to oncoming traffic. This is especially true when, as in this case, there are no unusual obstacles or obstructions.
Because a driver cannot delegate his or her responsibility for ensuring that it is safe to proceed across an intersection, especially under normal driving conditions, i.e., when there are no unusual obstructions or conditions, we now hold that, as a matter of law, a signaling motorist cannot be held liable for negligence when the signaled driver proceeds across an intersection without independently ensuring that it is safe to do so. In other words, the signaling motorist’s conduct constitutes a courtesy to the signaled motorist, but it does not relieve the signaled motorist of his or her own duty to ensure that it is safe to proceed. A hand signal can easily be misconstrued, and our holding rests on the premise explained in Isaacs, supra, “that a signal to cross can be interpreted as no more than a yielding of the right of way.”
In this case, the undisputed evidence indicates that Tidwell was well within the left-turn lane. Although, admittedly, a truck in a left-turn lane may be more difficult to see around than a car, it certainly does not constitute an unusual obstruction or condition. Rucks admitted that she proceeded across the intersection without verifying that the way was clear of oncoming traffic. Because it was the conduct of Rucks and not Tidwell that was the proximate cause of the accident between Rucks’s vehicle and the vehicle in which Pell was a passenger, Tidwell cannot be liable to Pell for negligence. Accordingly, under the facts of this ease, the trial court *171 properly entered the summary judgment in favor of Tidwell and the board.
For the reasons set forth above, the judgment of the trial court is affirmed.
AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. The August 20, 2010, judgment was not certified as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.

. In his appellate brief, Pell makes no argument regarding the propriety of the summary judgment as to the board. Thus, any arguments Pell could have made are deemed waived. Edosomwan ex rel. Edosomwan v. A.B.C. Daycare & Kindergarten, Inc., 32 So.3d 591, 593 (Ala.Civ.App.2009) (citing Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003)) (stating that issues not raised and argued in brief are waived and affirming a summary judgment insofar as it related to claims about which the appellant had failed to raise an argument on appeal).